UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN REYES BRISEDA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DANIELLE LEHMAN, et al., <br><br> Defendants. | Case No. 23-cv-00495-TSH <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 14 |

## I.   INTRODUCTION

On February 2, 2023, Plaintiffs Juan Reyes Briseda[1] and Maria de los Angeles Zamudio Gonzalez filed this case against Defendants Emilia M. Bardini,[2] Alejandro Mayorkas, and Merrick Garland, seeking to compel Defendants to schedule asylum interviews for Plaintiffs.  ECF No. 1 [Complaint] ¶ 13.

Pending before the Court is the Defendants' motion for summary judgment.  ECF No. 14 [Defs.' Mot. for Summ. J.].  Plaintiffs filed an Opposition (ECF No. 18) and Defendants filed a Reply (ECF No. 23).  For the reasons stated below, the Court **GRANTS** Defendants' motion.[3]

---

[1] Reyes Briseda's asylum application lists his name as Juan Reyes Breceda.  ECF No. 1-1. In this order, the Court adopts the alternative spelling used in the caption of the complaint.
[2] Danielle Lehman is substituted for Emilia Bardini as the Director of the San Francisco Asylum Office.
[3] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 5,

## II. BACKGROUND

Plaintiffs are Mexican citizens who filed applications for asylum in November 2020. ECF No. 1-1. Plaintiffs allege that they requested the scheduling of interviews with the Asylum Office on December 22, 2021 and September 15, 2022. Compl. ¶ 9. Because Defendants have not scheduled an interview between Plaintiffs and an Asylum Officer, Plaintiffs filed this lawsuit on February 2, 2023, bringing claims for mandamus relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq, and the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to act on their asylum applications.[4] Compl. ¶ 1. Plaintiffs ask that the Court enter an order compelling Defendants to issue an Asylum Office interview scheduling notice and awarding Plaintiffs reasonable attorney's fees and costs. *Id.* ¶ 13. The defendants are relevant government officials, including the Director of the San Francisco Asylum Office, DHS secretary, and U.S. Attorney General.

Under the Immigration and Nationality Act ("INA"), a noncitizen "who is physically present in the United States or who arrives in the United States" may apply to receive asylum in the United States, subject to certain exceptions. 8 U.S.C. § 1158(a). Applicants are eligible to apply for employment authorization, and are deemed to be "lawfully present" for the purpose of applying for certain benefits while their applications for asylum remain pending. 8 C.F.R. § 208.7(a)(1); *e.g.*, 8 C.F.R. § 1.3(a)(5) (deeming asylum applicants "lawfully present" for the purpose of applying for Social Security benefits). Employment authorizations are renewable for a continuous period, in increments of up to five years. 8 C.F.R. § 208.7(b); USCIS Policy Manual, Vol. 10, Part A, Ch. 4, § C.1, https://www.uscis.gov/policy-manual/volume-10-part-a-chapter-4.

In the early 1990s, the former Immigration and Naturalization Service ("INS") began automatically mailing employment authorizations to asylum applicants while their applications were pending, which would remain valid until the applications were fully adjudicated. ECF No. 15 [Decl. of John L. Lafferty] ¶ 15. As processing times increased, so did the filing of non-

---

12, 13.
[4] Plaintiffs also bring this action pursuant to 8 U.S.C. § 1447, which concerns hearings on denials of applications for naturalization. Because Plaintiffs do not allege that they ever filed applications for naturalization, the Court does not evaluate their claims under § 1447.

1  meritorious or frivolous asylum claims to secure employment authorization. *Id.* By 1994, there
2  were over 400,000 pending asylum applications for applicants who were physically present in the
3  U.S. and not in removal proceedings ("affirmative asylum applications.") *Id.* ¶¶ 6, 15. In
4  response, in 1995, the INS implemented the "Last-In-First-Out" ("LIFO") scheduling system,
5  under which recently filed cases would be scheduled for interview before older cases. *Id.* ¶ 17.
6  The INS reasoned that the possibility that asylum cases would be adjudicated quickly would
7  discourage people from filing non-meritorious claims just to obtain work authorization for the
8  pendency of their applications. *Id.*

The LIFO policy reduced the backlog of asylum applications from over 464,100 applications at the end of fiscal year 1995 to just over 4,200 applications that had been pending over six months by the beginning of fiscal year 2013. *Id.* ¶ 18. However, a surge in credible and reasonable fear and unaccompanied child cases diverted Asylum Officers from adjudicating other types of asylum applications, undermining the effectiveness of the LIFO system. *Id.* ¶¶ 19-21. In December 2014, USCIS announced it would temporarily adopt a "First-In-First-Out" ("FIFO") policy, under which asylum applications were processed in the order in which they were filed. *Id.* ¶ 21. In the years following the adoption of FIFO, the number of applications for employment authorization documents by initial pending asylum applicants increased more than sixfold, and USCIS saw a substantial increase in the number of non-meritorious asylum applications. *Id.* ¶ 22. On January 31, 2018, USCIS announced it would reinstate the LIFO scheduling system, which remains in place today. *Id.* ¶ 24, 60. Following the return to LIFO, the rate of growth in the backlog of asylum applications decreased. *Id.* ¶ 29.

### III.   LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

3

1   reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477
2   U.S. 242, 248 (1986).

3         If the moving party meets its initial burden, the opposing party must then set forth specific
4   facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.
5   at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving
6   party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the
7   task of the Court "to scour the record in search of a genuine issue of triable fact."  *Keenan v.*
8   *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with
9   reasonable particularity the evidence that precludes summary judgment."  *Id.*; *Cafasso, U.S. ex rel.*
10  *v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must
11  set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.")
12  (citations omitted).  Thus, "[t]he district court need not examine the entire file for evidence
13  establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with
14  adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*,
15  237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626
16  F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")
17  (citations omitted).

18        "While the evidence presented at the summary judgment stage does not yet need to be in a
19  form that would be admissible at trial, the proponent must set out facts that it will be able to prove
20  through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)
21  (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must
22  be made on personal knowledge, set out facts that would be admissible in evidence, and show that
23  the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party
24  fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not
25  significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. 242, 249–50
26  (1986) (citations omitted).

27
28

4

## IV.   DISCUSSION

**A.   Mandamus Act**

Defendants argue that mandamus relief is unavailable in this case.  Defs.' Mot. for Summ. J. at 13.  The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action . . . to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "Mandamus is an extraordinary remedy granted in the court's sound discretion.  For mandamus relief, three elements must be satisfied: (1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available."  *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003) (internal quotations and citations omitted).

Courts have found that 8 U.S.C. § 1158(d)(5)(A), governing procedures regarding the consideration of asylum applications, cannot provide a basis for mandamus relief because the INA expressly precludes a private right of action to enforce those timing requirements.  *See* 8 U.S.C. § 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.").  "The Ninth Circuit has held that identical language in other immigration statutes foreclose[s] mandamus relief."  *Alaei v. Holder*, No. 2:15-cv-08906-ODW-JPR, 2016 WL 3024103, at *2, (C.D. Cal. May 26, 2016) (citing *Campos v. I.N.S.*, 62 F.3d 311, 313-14 (9th Cir. 1995)); *see also Fang Yan v. Dir. of Los Angeles Asylum Off. for the United States Citizenship & Immigration Servs.*, No. 22-cv-05846-ODW-MRW, 2023 WL 4053410, at *5-6, (C.D. Cal. June 16, 2023) (same); *Teymouri v. U.S. Citizenship & Immigration Servs.*, No. CV 22-7689 PA-JCX, 2022 WL 18717560, at *5, (C.D. Cal. Jan. 31, 2022) (same); *Ma v. Jaddou*, No. 2:22-cv-04210-MWF-KS, 2022 WL 17254783 at *2, (C.D. Cal. Sep. 26, 2022) ("Because Plaintiff has failed to state a claim for violation of the INA for which relief can be granted, Plaintiff has failed the first prong of the Mandamus Act that there is a clear and certain claim."); *Pesantez v. Johnson*, No. 15-CV-1155-BMC, 2015 WL 5475655, at *2 (E.D.N.Y. Sept. 17, 2015) (concluding that "[i]t is beyond serious dispute that mandamus . . . is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private

1    right of action"). Plaintiffs do not dispute this point or suggest there is any other basis for

2    mandamus relief. ECF No. 18 at 2-3. Accordingly, the Court finds that Plaintiffs cannot state a

3    claim under the Mandamus Act, and that Defendants are entitled to summary judgment on this

4    claim.

**B.     Subject Matter Jurisdiction**

Defendants argue that the Court lacks subject matter jurisdiction to hear Plaintiffs' APA claims. Defs.' Mot. for Summ. J. at 14-15. "Repeatedly, courts in the Ninth Circuit that have addressed § 1158(d)(7) have declined to conclude that a private right of action exists" to enforce the timing requirements of 8 U.S.C. § 1158(d)(5)(A). *Varol v. Radel*, 420 F. Supp. 3d 1089, 1095-96 (S.D. Cal. 2019); *Yan*, 2023 WL 4053410, at *2-3; *Teymouri*, 2022 WL 18717560, at *3.

At the same time, courts in the Ninth Circuit have found that this "prohibition against a private right of action to enforce the timing requirements set forth in Section 1158(d)(5)(A) does not deprive the Court of subject matter jurisdiction[.]" *Yan*, 2023 WL 4053410, at *3. These courts have reasoned that "the prohibition against a private right of action articulated in Section 1158(d)(7) does not preclude judicial review of USCIS's inaction under the APA," nor does it "include the jurisdiction-stripping language found elsewhere in the [Immigration and Nationality Act ('INA')]." *Id.* at *3; *see also Varol*, 420 F. Supp. 3d at 1096 (distinguishing from other subsections of the INA that expressly preclude judicial review and finding the court retains subject matter jurisdiction); *Kang v. Jaddou*, No. 2:21-cv-09488-RGK-E, 2022 WL 2189634 at *2 (C.D. Cal. Apr. 25, 2022) (same).

Defendants maintain that the Court lacks subject matter jurisdiction because DHS "is not compelled to act within a certain time period," ECF No. 23 at 4. But "the APA requires an administrative agency to adjudicate matters presented to it within a 'reasonable time.'" *Varol*, 420 F. Supp. 3d at 1096 (quoting 5 U.S.C. § 555(b)). "Thus, courts in this Circuit have repeatedly found that even if there is no private right of action to enforce the time frames set forth in 8 U.S.C. § 1158(d)(5)(A), the court may still review the agency's actions under the APA, which specifies that an agency shall not unreasonably delay any discrete agency action." *Su v. Mayorkas*, — F. Supp. 3d —, No. 23-cv-00566-KAW, 2023 WL 7209630, at *4 (N.D. Cal. Oct. 17, 2023) (quoting

1   *Kang*, 2022 WL 2189634, at *2); *see* 5 U.S.C. § 706(1) (a "reviewing court shall . . . compel
2   agency action unlawfully withheld or unreasonably delayed"). Plaintiffs' complaint makes no
3   mention of the 45-day timeline set forth in 8 U.S.C. § 1158(d)(5)(A). Rather, their complaint is
4   grounded in the notion that the existing delay is unreasonable. *See* Compl. ¶¶ 11 (noting the
5   "alleged delay in the issuance of an interview scheduling notice"), 12 (alleging "Plaintiffs are
6   harmed because of the delay of defendants"). *See also Kang*, 2022 WL 2189634, at *2 (denying
7   Defendants' motion to dismiss Plaintiff's APA claim for lack of subject matter jurisdiction
8   pursuant to Rule 12(b)(1) and noting that "Plaintiff does not seek to enforce the 45-day time
9   period. Rather, Plaintiff seeks a determination of unreasonable delay, and an order compelling
10  Defendants to place her asylum application in the priority dictated by Defendants' agency policy
11  and grant her an interview."). Accordingly, the Court finds it has jurisdiction to review Plaintiffs'
12  APA claims.

### C.  Administrative Procedure Act

Finally, Defendants argue that Plaintiffs cannot establish an APA claim. To determine whether agency delay is unreasonable, courts typically apply the factors set out in *Telecommunications Research and Action Center v. FCC* ("*TRAC* factors"):

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (cleaned up); *see also, e.g.*, *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001) (applying *TRAC* factors in assessing whether National Marine Fisheries Service unreasonably delayed congressionally mandated stress studies). "The most important *TRAC* factor is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *Cmty. Voice v. United States EPA (In re Cmty. Voice)*, 878 F.3d 779, 786 (9th

7

1  Cir. 2017). "[C]ourts measure the period of delay from the last government action to the issuance

2  of the opinion." *Dang v. Mayorkas*, No. 23-cv-02212-LB, 2023 WL 8007993, at *4 (N.D. Cal.

3  Nov. 17, 2023) (internal quotations omitted). Accordingly, the delay here is measured from

4  November 2020, when DHS acknowledged receipt of Plaintiffs' asylum applications. The Court

5  finds the *TRAC* factors favor Defendants, and that summary judgment must be granted in

6  Defendants' favor.

### 1. Rule of Reason

The first *TRAC* factor "requires that the time it takes for the agency to act is governed by a 'rule of reason.'" *Su*, 2023 WL 7209630, at *5 (quoting *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 6462398 at *8, 2020 (N.D. Cal. Nov. 3, 2020)).

The Court finds that the LIFO policy is a rule of reason. Defendants have explained that LIFO was implemented to reduce the backlog of asylum applications and to discourage individuals from filing frivolous or non-meritorious applications to obtain work authorization. *See* Lafferty Decl. ¶¶ 15, 17, 29. Defendants have demonstrated LIFO's practical effects, including considerably reducing the backlog and deterring the filing of non-meritorious applications. *Id*. ¶¶ 18, 22. Defendants have also demonstrated how the temporary adoption of FIFO beginning in 2014 led to a substantial increase in non-meritorious asylum applications and in the backlog, *id*. ¶¶ 22, 34, and how the current LIFO policy and priority system for scheduling affirmative asylum interviews is intended to stem the backlog. *Id.* ¶ 24-26, 60.

In response, Plaintiffs contend that LIFO is not a rule of reason because the policy has failed to address what Plaintiffs identify as systemic problems with the asylum process. ECF No. 18 at 5. To dispute LIFO's reasonableness and efficacy, Plaintiffs point to increases in backlogged asylum applications in recent years despite the 2018 reimplementation of LIFO. *Id.* But satisfaction of the first *TRAC* factor requires only that the policy be governed by an "identifiable rationale." *Ray*, 2020 WL 6462398, at *9. Defendants also explained that the surge in affirmative asylum applications in recent years comes primarily from people whose countries of origin are "experiencing well-documented political and humanitarian crises," and that "LIFO is not designed to deter applications made in good faith." Lafferty Decl. ¶¶ 35-36.

8

1 Accordingly, the Court finds that a rule of reason governs the LIFO policy, and that the first *TRAC* factor favors Defendants.

### 2. Congressional Timetable

"The second *TRAC* factor considers whether Congress has provided an indication of the speed with which it expects an agency to act." *Su*, 2023 WL 7209630, at *6 (quoting *Jain v. Jaddou*, No. 21-cv-03115-VKD, 2023 WL 2769094 at *6 (N.D. Cal. Mar. 31, 2023)). Courts have consistently acknowledged that Congress has "provided a clear timetable for the processing of asylum applications, including 8 U.S.C. § 1158(d)(5)(A)'s expectation that interviews be scheduled within 45 days." *Id.* (citing *Varol*, 420 F. Supp. 3d at 1097). However, those same courts have found that "the plain language of 8 U.S.C. § 1158(d)(5)(A) clarifies that the timing requirements are not mandatory" and that the timetable "does not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays." *Varol*, 420 F. Supp. 3d at 1097. Rather, Congress has "indicated that USCIS retains limited discretion as to the timing of the adjudication of asylum applications under exceptional circumstances." *Yan*, 2023 WL 4053410, at *4.

In deciding this factor, courts have also considered the length of the delay, and found reasonable even delays of over five years. *See Teymouri*, 2022 WL 18717560, at *4 ("Moreover, while Plaintiff's application has been pending for over five years, courts have found similar delays to be reasonable."); *Yan*, 2023 WL 4053410, at *4 (finding a pending application of over four years to be reasonable); *Singh*, 2023 WL 4669864, at *2. While the Court does not seek to downplay the now over three-year delay Plaintiffs have endured since filing their asylum applications in 2020, the length of this delay is not unreasonable under the *TRAC* factors.

Thus, the Court finds the second *TRAC* factor favors Defendants.

### 3. Human Health and Welfare, and Nature of Interests

"The third and fifth *TRAC* factors, which overlap, concern 'whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay.'" *Su*, 2023 WL 7209630, at *6 (quoting *Yan*, 2023 WL 4053410, at *5).

9

1  Here, Plaintiffs assert that they are "greatly damaged" by Defendants' delay and "refusal"
2  to schedule their asylum interviews. Compl. ¶ 12. However, Plaintiffs provide no evidence
3  supporting the damage they allege. *See generally* Compl.; ECF No. 18. Again, the Court does not
4  seek to minimize the delay Plaintiffs have faced, but courts have repeatedly found that these *TRAC*
5  factors favor the defendants, even where plaintiffs have alleged more specific harms. For
6  example, the plaintiff in *Yan* alleged that the four-year delay in processing her asylum application
7  caused her "fear, despair, preoccupation and uncertainty," and deprived her of "the opportunity to
8  timely obtain the substantial and unique benefits of asylum status," such as the freedom of
9  movement and travel. *Yan*, 2023 WL 4053410, at \*5. Still, the court in *Yan* found that "any
10 prejudice Yan faces from delay is likewise faced by all asylum applications in similar positions,"
11 and that "the risk to human health and welfare and potential prejudice from delay in the processing
12 of the Application favor denying relief." *Id.*; *see also Varol*, 420 F. Supp. 3d at 1097
13 (acknowledging "the difficulty in waiting for the asylum interview and the processing of Plaintiff's
14 application," but finding that these factors favored the defendants as "Plaintiff continues to reside
15 in the United States pending the processing of her application and is authorized to work"); *Alaei*,
16 2016 WL 3024103, at \*3 (finding "no human health and welfare at stake in the delay as Plaintiff
17 can legally live and work in the United States pending adjudication of her application"); *Teymouri*,
18 2022 WL 18717560, at \*4 (finding allegations that "the unexplained delay [was] extremely
19 stressful for Plaintiff" and causing "significant emotional damage due to the uncertainty and worry
20 that he is suffering with no hope on the horizon" were insufficient, and that such "allegations
21 represent an extremely minimal showing of risk to human health or welfare" and are "inherent in
22 the process of seeking asylum."). The Court acknowledges that Mr. Reyes Briseda's renewal
23 request for work authorization currently remains pending, as he failed to timely request its
24 renewal. Defs.' Mot. at 22. Still, Plaintiffs do not allege that they have been damaged by Mr.
25 Reyes Briseda's ongoing wait for renewed work authorization. *See generally* Compl.; ECF No.
26 18. Meanwhile, Ms. Zamudio Gonzales remains authorized to work, and both Plaintiffs can
27 remain in the United States without fear of removal while their applications are pending
28 adjudication. *See* Defs.' Mot. for Summ. J. at 12, 22.

Thus, the Court finds the third and fifth *TRAC* factors favor Defendants.

### 4. Effect of Expediting Delayed Action

The fourth factor "consider[s] the agency's competing priorities." *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997). Here, the agency's competing priorities are the other asylum applications awaiting adjudication, including pending applications that were filed before Plaintiffs'. Accordingly, "granting relief to the Plaintiff[s] simply moves [them] to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief." *Varol*, 420 F. Supp. 3d at 1098.

Courts have declined to grant relief "[u]nder such circumstances, where a judicial order putting an individual at the head of the queue would simply move all others back one space and produce no net gain." *Su*, 2023 WL 7209630, at *7 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)) (internal quotation marks omitted); *see also Varol*, 420 F. Supp. 3d at 1098 (explaining that "it was sufficient to deny relief based on the fourth factor alone" where "advancing [the plaintiff's] asylum application for interview and adjudication may negatively affect other applicants in a similar position"); *Yan*, 2023 WL 4053410, at *5 (same); *Teymouri*, 2022 WL 18717560, at *5 ("advancing Plaintiff's Application would not serve a higher or competing priority, but would instead merely delay the adjudication of all other applicants"). Thus, the Court finds the fourth *TRAC* factor favors Defendants.

### 5. Impropriety

"The final factor considers whether there was any impropriety by the agency." *Su*, 2023 WL 7209630, at *7. Plaintiffs concede they do not know of any impropriety by Defendants, ECF No. 18 at 7, and the Court has not found any. Accordingly, this factor is neutral. *Id.*; *Yan*, 2023 WL 4053410, at *5.

### 6. Conclusion

Taken together, the Court finds that most of the *TRAC* factors favor Defendants, and weigh against granting relief to Plaintiff under the APA. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' APA claims.

11

**D.     Declaratory Relief**

Plaintiffs also bring this action pursuant to 28 U.S.C. § 2201, which allows courts to issue declaratory judgments in cases within the Court's jurisdiction. Compl. ¶ 1; 28 U.S.C. § 2201(a). Because the Court finds Defendants are entitled to summary judgment under the APA and Mandamus Act, the Court finds Plaintiffs are likewise not entitled to declaratory relief.

**E.     Evidentiary Objections**

Finally, Plaintiffs in their opposition raise several evidentiary objections to the ten exhibits Defendants attached to their motion for summary judgment. ECF No. 18 at 7. Plaintiffs argue that all of Defendants' exhibits constitute hearsay and do not fall under an exception, are lacking in foundation and personal knowledge, call for speculation, and are unduly prejudicial. *Id.* "But at the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)); *see also Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) ("[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial") (internal quotations omitted); *Garlick v. Cty. of Kern*, 167 F. Supp. 3d 1117, 1125 (E.D. Cal. 2016) (summarily dismissing blanket objections to evidence in support of motions for summary judgment based on relevance, hearsay, lack of foundation, lack of personal knowledge, prejudice, improper character evidence, and assuming facts not in evidence); Fed. R. Civ. Pro. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The Court therefore overrules Plaintiffs' blanket objections and declines to exclude these exhibits on these grounds. Regardless, even if the Court excluded all of the exhibits Plaintiffs objected to, it would still grant summary judgment anyway, as this order does not cite or rely on any of those exhibits.

///

///

///

## V. CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Defendants' motion for summary judgment and **OVERRULES** Plaintiffs' evidentiary objections.

**IT IS SO ORDERED.**

Dated: May 8, 2024

THOMAS S. HIXSON
United States Magistrate Judge

13